UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 3:07-cr-00079 JWS |
| vs. | ) ) ) | ORDER AND OPINION |
| RUSSELL J. LANE, | ) ) | [Re: Motion at docket 56] |
| Defendant. | ) ) | |

## I. MOTIONS PRESENTED

At docket 56, defendant Russell J. Lane moves for an order transferring trial in this case from Anchorage to Nome. Plaintiff has opposed the motion. Oral argument has not been requested, and it would not be of assistance to the court.

## II. BACKGROUND

Defendant Lane is being prosecuted on one count of being a felon in possession of a firearm. Lane is a resident of Point Hope, a small Alaska Native village situated within the North Slope Borough, where it is charged he possessed a double barreled 20 gauge shotgun on or about March 25, 2007. Point Hope is approximately 350 miles from Nome, a small city which is not located within the North Slope Borough. However, both Point Hope and Nome (as well as Barrow) are situated within the area from which petite jurors are drawn for federal trials in Nome.

The principal witness for the United States will be a North Slope Borough Public Safety Officer, Theodore Sharpe, who observed the firearm in Lane's possession, and following a series of confrontations with defendant, eventually took Lane into custody. On the date of the incident, Sharpe was the only North Slope Borough Public Safety

Officer in Point Hope, but he resides in Barrow, Alaska.  Although the conditions of his pre-trial release require Lane to be in Anchorage, his home is in Point Hope, where he is a local hero, because he is a successful whaling captain.  The case agent for the United States, Gordon Bittner, resides in Anchorage.  Counsel for plaintiff and for defendant reside in Anchorage.  While it is unclear to the court if plaintiff would consider it necessary to bolster the testimony of Mr. Sharpe at trial by calling other witnesses who may have seen Lane in possession of the firearm, such persons (such as Irene Tooyak who called the North Slope Borough's police dispatcher) were in Point Hope on the date of the incident and are very likely to be residents of that village.   Lane indicates that he expects to call witnesses who could offer testimony about Sharpe's credibility.  Lane does not say where such witnesses reside, but it is reasonable to conclude that they would be residents of the North Slope Borough, most likely Barrow which is by far the largest community within the Borough which is very sparsely populated.

The State of Alaska comprises a single federal judicial district, whose federal trial court is authorized to sit in five cities: Anchorage, Fairbanks, Juneau, Ketchikan, and Nome.[1]  All of the district judges and full time magistrate judges of this court maintain chambers in Anchorage, because the overwhelming share of the cases filed in the court are filed in Anchorage.

This court maintains no courthouse in Nome, although it can make arrangements to use the courtroom which is used by the state court.  This court has no chambers in Nome.  Litigants almost never choose to file cases in Nome.  During the past five years, a total of four civil cases have been filed in Nome, and no criminal cases have been filed in Nome.  No case filed in any other city has been moved to Nome for trial during that period of time.  The assigned judge was appointed to this court in October 1992, and cannot recall any case having been tried in Nome.  This court has no employees in Nome, but a state court employee is paid a minimal amount to be available to provide service in Nome if that is required.

---

[1] 28 U.S.C. § 81A.

The United States Attorney has no office in Nome. Plaintiff's counsel has no office in Nome. The United States Marshal has no employees in Nome.

### III. DISCUSSION

Rule 18 of the Federal Rules of Criminal Procedure provides as follows:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

The Ninth Circuit has recognized that in the application of Rule of 18, the trial court has broad discretion in deciding where within a judicial district a case should be tried.[2] The court may consider such things as pre-trial publicity, the ease of travel to a particular location, the availability of court facilities, the effect the trial's location may have on the resolution of pending motions in other matters, and so on.[3] Where within the district a crime is alleged to have been committed is another factor which should be considered.

Given that Lane is presently residing in Anchorage with his spouse as a condition of his pre-trial release, and that his lawyer lives and works in Anchorage, it cannot be said that Nome is a more convenient location for defendant, even if it is his preferred location.

It appears that all persons who might be witnesses in this case reside either in Barrow of in Point Hope. The only means of travel from either community is by air. There are no direct flights from Barrow to Nome. To fly from Barrow to Nome on a scheduled air carrier it is necessary to fly from Barrow to Anchorage and then from Anchorage to Nome. For those residing in Point Hope, to travel to either Nome or Anchorage, it is necessary first to travel to Kotzebue, from which there is scheduled air service to both Nome and Anchorage. According to the Alaska Airlines website (the only scheduled carrier providing service), in the first half of October, there will be daily round-trip flights from Kotzebue to Anchorage and from Kotzebue to Nome. The lowest

---

[2] *United States v. Scholl*, 964. F.3d 964, 969-70 (9th Cir. 1999).

[3] *Id.*

-3-

listed round-trip airfare exclusive of taxes and fees between Kotzebue and Anchorage is $330, and the lowest between Kotzebue and Nome is $248.  The shortest flight time displayed for a trip between Kotzebue and Anchorage is 1 hour and 28 minutes.  The shortest flight time displayed for a trip between Kotzebue and Nome is 40 minutes.  Hotel and dining accommodations are plentiful and varied in Anchorage.  They are very limited in Nome.  For any witness who resides in Barrow, trial in Anchorage would be substantially more convenient.  For any witness who resides in Point Hope, a trial in Anchorage would be somewhat less convenient in terms of air travel, but substantially more convenient in terms of accommodations.

The prompt administration of justice would be served by conducting the trial in Anchorage, rather than Nome.  First, the need for the court to attend to other matters on its docket favors holding the trial in Anchorage.  Second, the need to transport court personnel including a jury clerk, an in-court deputy, and chambers staff to Nome and finding accommodations in Nome weighs heavily in favor of holding the trial in Anchorage, where such folk would have time to address other matters in addition to being available when needed to assist with the trial.  Third, security mandates that a Deputy United States Marshal must be in attendance at criminal felony trials involving persons charged with violent crimes.  There is no deputy in Nome.  At the present time, with the exception of one deputy in Fairbanks, all of the deputies are in Anchorage.  Finally, the court notes that the lack of proper chambers for the court and the lack of offices for the United States Attorney and defense counsel in Nome will impact their ability to perform efficiently at trial, which risks prolonging the trial.

Defendant also asks the court to take into account his assertion that as an Alaska Native, he is entitled to have his trial conducted in Nome, because the petit jury pool there will have a higher percentage of Alaska Natives than the petit jury pool in Anchorage.  Defendant contends that if he is tried in Anchorage, it will be before a jury which is not a "fair cross-section" of the community as required by statute, citing 18 U.S.C. § 1861.[4]  In making his argument, defendant relies on data which shows that the

---

[4] 28 U.S.C. § 1861.

-4-

percentage of American Indians and Alaska Natives residing in Alaska is 14.1 percent, but the percentage residing in the Municipality of Anchorage is only 6.1 percent.[5] The United States does not challenge these figures. The court makes no finding that these figures are actually the ones which should be used in analyzing defendant's argument, but because they are the figures offered in support of the motion by defendant, and they are not challenged by plaintiff, the court will accept them for purposes of this case.

In responding to defendant's argument, the United States cites fifth circuit cases which support the proposition that where within a particular district a trial will be held is not a matter which rises to the level of constitutional concern,[6] and that the unit of concern for constitutional purposes is the district, not a division within a district.[7] However, defendant is not relying on the proposition that a trial in Anchorage would violate the United States Constitution.[8] Rather, the gravamen of his complaint is that it would be an abuse of discretion for this court not to take into account defendant's concern for a trial in which Alaska Natives are adequately represented in the petit jury pool.[9] The court agrees that it must take into account defendant's desire to be tried by a fair-cross section of the populace, for that is the policy Congress set forth in the Jury Selection and Service Act.[10]

The issue framed by defendant's proffered evidence is whether a petit jury pool which is 6.1 percent Native provides a fair-cross section of a community which is 14.1 percent Native. In the Ninth Circuit the method used for addressing such questions is

---

[5] Doc. 57 at p. 4.

[6] *United States v. Faulkner*, 17 F.3d 745 (5th Cir. 1994).

[7] *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981) *United States v. James*, 528 F.2d 199, 1021 (5th Cir. 1976).

[8] Doc. 57 at pp. 5-7.

[9] *Id.*

[10] 18 U.S.C. § 1861, *et seq.*

-5-

the "absolute disparity" method. [11] As the Ninth Circuit has explained: "We determine absolute disparity by taking the percentage of the group at issue in the total population and subtracting from it the percentage of that group as represented on the master jury wheel."[12] Here, the absolute disparity is determined by taking the 14.1 percent in the total population and subtracting the 6.1 percent on the petit jury wheel for Anchorage which yields an absolute disparity of 8 percent. A disparity of 7.7 percent of Hispanics and lesser percentages of other minority groups was held to be unobjectionable in connection with the composition of a grand jury in *United States v. Suttiswald.*[13] Although the court has found no case in the Ninth Circuit, or any other, where the disparity was 8 percent, the 7.7 percent disparity *Suttiswald* is quite close. Moreover, another circuit court has written: "Although precise mathematical standards are not possible, this circuit has consistently found that a prima facie case of underrepresentation has not been made where the absolute disparity . . . does not exceed ten percent."[14] Guided by the cases cited above, this court concludes that the petit jury pool in Anchorage is sufficiently representative of the population of the entire state to satisfy the requirements of the Jury Selection and Service Act.

## IV. CONCLUSION

In the exercise of its discretion and for the reasons set out above, the court concludes that the trial in this case should be conducted in Anchorage. The motion at docket 56 is **DENIED.**

DATED at Anchorage, Alaska. this 27th day of August 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[11] *United States v. Sanchez-Lopez*, 879 F.2d 541, 547 (9th Cir. 1989).

[12] *Id.*

[13] 696 F.2d 645, 648-49 (9th Cir. 1982).

[14] *United States v. Rodriquez*, 776 F.2d 1509, 1511 (11th Cir. 1985).